THE STATE OF NORTH DAKOTA, Respondent, v. EVA MOTT, Appellant.

(205 N. W. 234.)

**Indictment and information — information charging, in language of statute, that person has committed acts inhibited thereby, is sufficient.**

1. Where a statute inhibits and makes it a crime for any person to commit certain acts, an information which charges, in the language of the statute, that a person has committed the acts so inhibited, is sufficient.

**Criminal law — information held sufficient; presumption of regularity in receiving verdict; election of offense held made in time; evidence to show offense and reputation of accused and another held proper.**

2. In the instant case it is held, for reasons stated in the opinion, that the information is sufficient; that the defendant had a fair trial, free from prejudicial error; and that the verdict of guilty is amply supported by the evidence.

Opinion filed September 25, 1925.

Criminal Law, 16 C. J. § 2174 p. 862 n. 43; 17 C. J. § 3560 p. 214 n. 31; § 3565 p. 220 n. 93; § 3571 p. 225 n. 70. Indictments and Informations, 31 C. J. § 260 p. 708 n. 29; § 268 p. 718 n. 33. Lewdness, 36 C. J. § 21 p. 1042 n. 38; § 23 p. 1042 n. 46 New; § 24 p. 1039 n. 86; p. 1043 n. 50.

Appeal from the District Court of Ward County, *Lowe,* J.

The defendant Eva Mott was convicted of violating chapter 190, Laws 1919, and appeals from the judgment of conviction.

Judgment affirmed.

*J. E. Burke* and *E. T. Burke,* for appellant.

It is a general ruling of criminal evidence that on the trial of a person accused of crime proof of a distinct independent offense is inadmissible. People v. Molineaux, 62 L.R.A. 193.

It would be manifestly unjust to require a suitor entirely without notice to meet collateral issues of fact which he could not anticipate, i. e., not embraced within any issue of fact of the pleadings. State v. Haynes, 7 N. D. 70; Becker v. Caine, 8 N. D. 615.

Note.—(1) Necessity of following language of statute defining offense in indictment, see 14 R. C. L. 185; 3 R. C. L. Supp. 191; 4 R. C. L. Supp. 885; 5 R. C. L. Supp. 751.

*Geo. F. Shafer,* Attorney General, *L. L. Butterwick,* Assistant Attorney General, *H. E. Johnson,* State's Attorney, and *B. A. Dickinson,* for respondent.

The rule has not, however, been applied strictly in prosecutions for the so-called "sexual crimes" such as rape, adultery, incest, and seduction. In that class of prosecutions the rule has been most liberally extended. Nearly all the courts admit evidence of other acts of intercourse in such cases, occurring before the date mentioned in the indictment, on the theory of disclosing the relationship between the parties, opportunity and inclination to commit the act complained of, and as corroborative of the specific charge. State v. Haugher, 138 N. W. 937.

In a prosecution for statutory rape, it was not error to allow the state to introduce evidence of sexual intercourse had on different days. State v. Marty, 203 N. W. 679.

WOLFE, District Judge. The defendant, Eva Mott, appeals from a conviction of crime in the district court of Ward county. Appellant assigns 17 errors, all of which fall within four general classes, as follows:—1. The verdict is contrary to the evidence. 2. It was error to receive the verdict in the absence of the defendant. 3. It was error not to require the state to elect upon which charge it relied, before the close of the whole evidence. 4. Errors in the admission and exclusion of evidence.

The prosecution was under chapter 190, Session Laws 1919. The information, omitting formal parts, was in this language:—"That heretofore, to wit, on the 26th day of October, A. D. 1923, at the county of Ward, in said state of North Dakota, one Eva Mott, late of said county of Ward and state aforesaid, did commit the crime of 'immorality,' committed as follows, to-wit:—

"That at the said time and place the said Eva Mott did wilfully, wrongfully, unlawfully and feloniously enter and remain in a certain room in a building located in the city of Minot, Ward county, North Dakota, for the purpose of prostitution, lewdness and assignation, contrary to the form of the statute," etc.

No objection was made to the form or the sufficiency of the information, upon the trial. No exceptions were taken to the charge of the court, and no errors are assigned as to the charge.

The verdict, omitting formal parts, reads:—"We the jury in the above entitled action, find the defendant guilty of the crime of 'Immorality' as charged in the information."

The verdict is not challenged as to its form or sufficiency, the only attack upon it being that it is contrary to the evidence. No specification of the insufficiency of the evidence to sustain it is given.

The defendant did not testify. The essential facts, proved by the uncontradicted testimony, are, concisely, the following:—

About October 16th, 1923, the defendant and a man named Harris, rented a room from a Mrs. Johnson, in her dwelling, in Northeast Minot, Harris paying the rent for one month, in advance. For the next ten days, defendant and Harris were frequently seen to enter the room together in the nighttime; they were heard in the room together, and on one occasion, they were seen by the landlady in the room, in bed together. They were frequently seen to leave the house together in the morning, usually about 11 o'clock. They had a child of about three years of age with them in the room the last few days they occupied it, which child appears to have been born to the defendant.

On the evening of October 26th, the defendant was brought into the police station in Minot, at 10 or 11 o'clock, charged with being found in a room, other than the one usually occupied by her, with another man. She was turned over to the police matron, to whom she said that she had a child at her room and wanted to get it. The matron had a policeman who was acting as desk sergeant, get a car and they all went to the Johnson house, where defendant said she was living. At the house, the matron, over the objection of the defendant, followed her to and into the room. She noticed the odor of tobacco smoke and saw some man's wearing apparel in the room and asked the defendant about it, who then said, "Bill, you may as well come out," and the man, Harris, came out from under the bed, undressed, except for a suit of summer underwear. He was placed under arrest and directed to dress. The defendant, at the request of the matron, went down to the car and the desk sergeant returned to the room with her. Harris was taken to the station, but the defendant was left in the room, with her child. The next morning, the matron, having found a place for the child, brought the defendant back to the station.

When Harris was arrested in this room, he took certain of his per-

sonal belongings with him, among them, being some medicine. The matron asked him what that was and he, in the presence of the defendant, said it was medicine he got from his doctor for a venereal disease.

The defendant, at her preliminary hearing, told the matron that she had lived in this room with Harris for a few days more than two weeks.

Evidence was introduced as to the reputation of the defendant, and as to the reputation of places she had frequented, among them being two houses of ill fame. Her being at one of them was before her arrest; the other instance, after her arrest, but before the information in this case was filed. Evidence was also introduced as to the reputation of the man, Harris, as a frequenter of houses of ill repute.

The defendant, introduced evidence of her marriage to a man other than Harris, after her arrest, and before her trial.

1. Under the first assignment of error, it is contended that there is no evidence that the defendant resorted to this room for purposes of either prostitution or assignation, as those terms are defined in the law. Conceding but not deciding that claim, for the purposes of this decision, yet it is perfectly apparent that she did resort to the room for purposes of lewdness, as defined by the law, and that is ample to sustain the verdict. The evidence of lewdness is plenary. The verdict is amply sustained by it.

2. It is assigned as error that the court received the verdict against the defendant in her absence; but it is not argued in the briefs, nor was it touched upon in the oral argument, nor does the fact anywhere appear in the record that such was the case. Upon such a record, we must give heed to the presumption of regularity in the conduct of the court in that regard. No such error appears.

3. It is claimed that the court erred in not requiring the state to elect, at the outset of the trial, upon which particular act of resorting to a room for criminal conduct, it relied for conviction. Evidence was introduced, over defendant's objection, that the defendant had resorted to other rooms, with men or in houses of ill fame. This evidence was clearly competent under the express terms of the statute. Whether this is a case where any election need be made, because of the provisions of the statute for proving more than one act in conflict with it, we need not decide. After the evidence was all in, and just as the state's attorney commenced to address the jury in his opening argu-

53 N. Dak.—15.

ment, the court interrupted proceedings and, conformably to the many demands of the defendant theretofore made, required the state to elect. Proper election was made, the state relying on the resort to the room in the Johnson house. If an election were required, it was made in time. State v. Marty, 52 N. D. 478, 203 N. W. 679.

4. The errors assigned relating to the admission and exclusion of evidence fall within four general classifications:—1. In admitting evidence of the defendant's reputation. 2. In admitting evidence of the reputation of Bill Harris, who was not called as a witness. 3. In admitting evidence that Bill Harris had been convicted of crime. 4. In sustaining the objection of the state to certain questions asked on cross-examination. Assignment number 1 relates to the admission of evidence relating to the medicine and talk concerning it, in the defendant's presence, in the room, when Harris was arrested. It is claimed that admitting the statement of Harris that the medicine was his and was for the treatment of a venereal disease, was incompetent and highly prejudicial. In disposing of this assignment, it is enough to say that it was competent tending to show the relations between defendant and Harris. It was not error to admit it.

No error was committed in admitting evidence of the reputation of the defendant and Bill Harris, with whom she says she lived in this room for a couple of weeks. The statute expressly authorizes proof of this kind, and the legislature had the undoubted power to establish such a rule of evidence.

It was suggested on the oral argument that the court, over the objection of the defendant, admitted evidence on the part of the state, that Bill Harris had been convicted of a crime. An inspection of the record, however, shows that the trial court sustained defendant's objection to such evidence, and that the fact of his conviction, and details of his crime, were brought out by the defendant, on cross-examination.

We have carefully examined the record in relation to the errors assigned upon the sustaining of the state's objections to certain questions asked by defendant on cross-examination, assignments 6, 7 and 8, and find no error. The rulings are right.

It was suggested on the oral argument that the information, verdict and judgment were all void, because, in them, the crime of which the defendant was convicted is named that of "immorality," and no such

crime is known at common law, and no crime is so named in the statute. None of these things seems to have been suggested to the trial court, but, as they go to the legal rights of the defendant, we consider them, although no error is assigned upon them.

The information is sufficient. Where the legislature makes the doing of certain acts criminal, without designating the crime by any specific name, the acts are none the less criminal and one committing them may be prosecuted for their commission. The name, "immorality," in the information and verdict may be treated as mere surplusage. The facts inhibited are clearly stated in the information and there is no suggestion that the defendant was misled or prejudiced by the insertion of the name "immorality," even if unwarranted. The verdict, omitting the criticized name, incorporates all those facts into itself by reference to the information.

We have, therefore, in this case, a sufficient information; a trial without prejudicial error and a proper verdict of guilty.

The judgment entered describes the crime as that of "immorality as charged in the information heretofore had against the defendant in this court," and proceeds to sentence. Omitting the criticized word, the judgment describes the crime of which defendant has been convicted as the one charged in the information, where the acts made criminal are all set forth. We think this is sufficient; although not a practice to be commended. It seems that it would be better practice, in cases of judgments of guilt of crimes not named by statute, or known at common law, to adjudge the defendant guilty of the specific acts inhibited by statute in the terms of the information and which are supported by the evidence.

The judgment appealed from is affirmed.

CHRISTIANSON, Ch. J., and BURKE, NUESSLE, and JOHNSON, JJ., concur.

BIRDZELL, J., did not participate; Honorable CHAS. E. WOLFE, Judge of the Third Judicial District sitting in his stead.