[File No. 85, Cr.]

STATE OF NORTH DAKOTA, Respondent, v. GEORGE FARRIER, Appellant.

(240 N. W. 872.)

Opinion filed February 1, 1932.

*F. J. Graham,* for appellant.
*C. A. Whipple,* State's Attorney, for respondent.

Burr, J. The defendant is charged with the crime of receiving into a building then and there owned and controlled by him, "a female person for the purpose of prostitution, lewdness and assignation, and did permit" her to remain there for that purpose. The jury found the defendant guilty of such crime in the second degree, and he was sentenced in conformity with the verdict.

A motion for a new trial was made and denied. From the order denying this motion and from the judgment the defendant appeals.

There are thirteen specifications of error—five of these deal with the admission of testimony, two with the refusal of the court to advise a verdict of not guilty, and to direct such verdict, four deal with alleged errors in the instructions, and two with the sufficiency of the evidence and in denying the motion for a new trial.

The errors alleged in the reception of the testimony are without foundation. They deal with the question of the woman's reputation for morality and the reputation of the place. Witnesses testified they knew the reputation and what it was. Such testimony is admissible in cases of this character. Section 9643a3 of the Supplement says that in such cases as the one involved "the reputation of any place, structure or building and of the person or persons who reside in or frequent the same and of the defendant shall be admissible in evidence in support of the charge." See State v. Mott, 53 N. D. 222, 226, 205 N. W. 234.

There was no error in the court refusing to advise a verdict of not guilty or refusing to direct a verdict of not guilty. Section 10,854 of the Compiled Laws permits the trial court to advise a jury to acquit the defendant if he deems the evidence insufficient to warrant the conviction. "But the jury are not bound by the advice, nor can the court, for any cause, prevent the jury from giving a verdict." Error cannot be predicated on the court's refusal so to do. See State v. Wright, 20 N. D. 216, 126 N. W. 1023, Ann. Cas. 1912C, 795, and State v. Albertson, 20 N. D. 512, 128 N. W. 1122.

The four alleged errors in instruction deal with the action of the court in reading to the jury parts of the statute under which this prosecution was had—chapter 190 of the Session Laws of 1919, being chapter 40A of the Penal Code shown in the Supplement. The court read to the jury § 1 of the Act, gave the definitions of "prostitution" "lewdness" and "assignation" as defined in § 2 of the Act; read the statutory provision regarding testimony as to the reputation of place and the frequenters thereof as set forth in § 3 of the Act, and later gave the statutory distinctions which distinguish the degrees of the crime set forth in § 4 of the Act. It is alleged these instructions were prejudicial because these portions are not applicable to the issues, that

there were no facts warranting the giving of such instructions, that it inferred a conviction could be had upon reputation alone, and that defining the degrees was harmful to the defendant. There is no merit in these objections. The court read those portions only of the statute dealing with the crime charged. It was necessary to state the law of the land to the jury, and the character of the crime, the meaning of the terms, and the value of reputation as an evidentiary fact were all involved in the issue. No prejudice resulted to the defendant in informing the jury as to what facts were necessary before he could be found guilty of the crime in the first degree as the jury found him guilty in the second degree only, and if the defendant were guilty, he was guilty of the crime in the second degree.

The real issue in the case is the sufficiency of the evidence to justify the verdict. The defendant lived in a shack about nine feet by sixteen feet. There was but one room, and this contained some furniture including a bed. Witnesses for the state testified that they saw this woman go into the shack in company with a man other than the defendant, that they saw the three of them at the place, that from time to time thereafter four men came and were admitted, that two men came and were turned away by the defendant until some of those inside had left, that the woman's reputation was that of a prostitute, and the testimony of the sheriff shows that she admitted to him that this was her "profession." The testimony of the state showed the reputation of this shack to be bad for booze and women. About thirteen days after the incident related the sheriff and his deputy went to the shack about midnight. As they arrived they found some cars parked near the place; they turned their light on the shack just at the time the defendant was coming out in his underclothes, and went to the rear of the shack. The sheriff and his deputy went immediately to the place, knocked on the door and were admitted by the woman, and another man was found in the shack with her. The woman appeared to be dressed, but upon the return of the sheriff to get some of her belongings the sheriff found some underclothes which defendant said belonged to this woman. The defendant admitted that this woman and man came to his shack about midnight while he was in bed, that

immediately upon their entrance he left the shack, and left the two of them there. He gives an explanation of why this happened. He denies some of the incidents relevant to the first day mentioned and explains others. His explanation is consistent with innocence, if believed by the jury.

The reputation and character of the woman, the business she was engaged in, the time of her presence, the reputation of the place, the suspicious actions of the defendant, his direction to the men who were coming and the order in which they were admitted (if truly stated by witnesses for the state) his opportune and coincidental departure from the shack at midnight when the woman and her male companion came were all presented to the jury and evidently convinced the jury that defendant's explanation was not true.

It is urged that ill reputation of the woman or of the place, or both, is not sufficient in itself to sustain the verdict. This view has strong support. Botts v. United States, 83 C. C. A. 646, 155 Fed. 50, 12 Ann. Cas. 271; Putman v. State, 9 Okla. Crim. Rep. 535, 46 L.R.A. (N.S.) 593, 132 Pac. 916. Such testimony should be corroborated. But in the case at bar there is strong corroborative evidence. Direct evidence of acts belonging to the profession is not imperative. The character of the woman, her purpose in resorting to his house, his knowledge of this and his permission may be shown indirectly, if shown sufficiently.

The defendant was found guilty of the crime in the second degree. The court saw the witnesses, heard the testimony, and believed the verdict was justified by the evidence. There being no good grounds shown for reversal the judgment therefore is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL and BURKE, JJ., concur.